**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| **William Henry Harrison** ) | |
|      **a/k/a God Kundalini Isa Allah,** ) | |
|      **Plaintiff,** ) | |
| ) | |
| **v.** ) | **1:06cv1061 (TSE/TCB)** |
| ) | |
| **Harrell Watts, <u>et al</u>.,** ) | |
|      **Defendants.** ) | |

<u>MEMORANDUM OPINION</u>

William Henry Harrison a/k/a God Kundalini Isa Allah, a former federal inmate who was

housed in the Eastern District of Virginia during the time relevant to his claims, brought this civil

rights action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403

U.S. 388 (1971), and the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb

<u>et seq.</u>, alleging, <u>inter alia</u>, that various employees and administrators within the Bureau of Prisons

("BOP") violated his First Amendment right to free exercise, his Fifth Amendment right to equal

protection, and his rights under the RFRA.  On March 28, 2008, defendants' Motion to Dismiss was

granted, and the complaint was dismissed without prejudice, with directions that the plaintiff would

have thirty (30) days within which to submit an amended complaint addressing the deficiencies

discussed in the Memorandum Opinion that accompanied the Order of dismissal.  <u>Harrison v. Watts</u>,

<u>et al.</u>, 1:06cv1061 (E.D. Va. Mar. 28, 2008) (Mem. Op.) (hereinafter "Opinion").

On July 17, 2008, plaintiff filed both a self-styled Motion for Reconsideration of the Order

dismissing the complaint, as well as a Verified Amended Complaint.  (Docket ## 49–50).  The

individual defendants filed a Motion to Dismiss the Amended Complaint or, in the Alternative, for

1

Summary Judgment, along with a consolidated memorandum setting forth their opposition to plaintiff's Motion for Reconsideration, on August 11, 2008. (Docket ## 52–53). Plaintiff filed a Reply to defendants' Motion on August 26, 2008, (Docket # 56), and defendants submitted a Response in Opposition to plaintiff's Motion for Reconsideration and a Reply Memorandum in support of their Motion to Dismiss on September 12, 2008. (Docket ## 59–60). On September 18, 2008, plaintiff moved for permission to file a "sur-reply" to defendants' Reply Memorandum, and also filed his "sur-reply" on that same date. (Docket ## 62–63).

For the reasons that follow, plaintiff's Motion for Reconsideration must be denied. Plaintiff's Amended Complaint was untimely and leave pursuant to Rule 15, Fed. R. Civ. P., to file the Amended Complaint must be denied as futile. In the alternative, defendants' Motion to Dismiss the Amended Complaint must be granted. Plaintiff's Motion for Permission to File Sur-Reply to Defendants' Reply Memorandum will also be granted.

## I. Facts and Proceedings

In 2005, when the events at issue occurred, plaintiff was a federal inmate housed at the Federal Correctional Complex Petersburg ("FCC Petersburg"). He has since been released from prison.[1] The named defendants are Harrell Watts, Administrator of National Inmate Appeals for the BOP; Harley G. Lappin, Director of the BOP; Kimberly White, Regional Administrator of Inmate Appeals for the BOP's Mid-Atlantic Region; Vanessa P. Adams, Warden of FCC Petersburg; Jesus M. Huertas, Supervisory Chaplain at FCC Petersburg; and "Ms. Browder," Associate Chaplain at FCC Petersburg.

---

[1] On August 8, 2008, plaintiff submitted a Notice of Change of Address, indicating that he has been released from prison and is residing in Richmond, Virginia. (Docket # 51).

In his initial complaint, plaintiff alleged that for over thirty-six years he has been a sincere adherent of the Nation of Gods and Earths ("NOGE"), which is otherwise known as the "Five Percenters."  Described by plaintiff as a "God-centered Culture/Way of Life rooted in Supreme Mathematics and the Teachings of Allah," Pl.'s Resp. to the Feb. 7, 2007, Order at 2 (Docket # 4), the NOGE teaches that the "Black man is God and the White man is the grafted devil," that its members or adherents do not "accept, believe in, pray to, nor worship a mystery, spook, spirit, or invisible God," and that "each Black man is his own god."  Compl. at 5–6, 19.  Plaintiff characterized the NOGE as a "way of life" and emphasized that it is not a religion, although it is a "culture" that holds many of the same "values, principles and mores" held by religions.  Compl. at 5.

On August 15, 2005, plaintiff requested that the BOP, the United States Department of Justice ("DOJ"), and the United States recognize the NOGE as a "valid and viable" entity entitled to the same protections afforded to other faith-based religious groups within the BOP under the First and Fifth Amendments to the Constitution and the RFRA.  Additionally, plaintiff requested time and space in FCC Petersburg's chapel for use by the NOGE for a weekly gathering called a "Parliament," and for use of the prison dining hall for a fast-breaking celebration on two annual "holy" days commemorating the birth and death of the NOGE's founding member.  When his requests were denied, plaintiff unsuccessfully pursued his claims through the BOP Administrative Remedy Program, as is fully described in the Opinion.

On or about September 9, 2006, plaintiff filed the original complaint pursuant to the RFRA and Bivens, which extends 42 U.S.C. § 1983 liability to federal officials, against the current individual defendants, the BOP, the DOJ, the United States, and the BOP's Religious Issues

Committee ("RIC").  Liberally construed,[2] plaintiff originally claimed that (1) defendants' denial

of space for the NOGE meetings at FCC Petersburg, while granting access for other faiths, violated

plaintiff's rights under the First Amendment, the Fifth Amendment, and the RFRA; (2) defendants

violated his Fifth Amendment right to due process by refusing his grievance; and (3) defendants'

refusal to afford the NOGE as a group the same protections as other religious or faith groups

violated his rights under the First Amendment, the Fifth Amendment, and the RFRA.  Plaintiff

sought (i) damages, (ii) a declaration that his "way of life" is entitled to the same protections as any

other religion in the prison context, and (iii) injunctive relief directing defendants to allow plaintiff

and other NOGE members "to practice their Culture/Way of Life."  Compl. at 21.  By Order dated

February 7, 2007, plaintiff's Due Process Clause claim and his claims against the BOP, the DOJ,

the United States, and the RIC were dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to

state a claim.  Harrison v. Watts, et al., 1:06cv1061 (E.D. Va. Feb. 7, 2007) (Order).

    The remaining individual defendants filed a Motion to Dismiss or, in the Alternative, for

Summary Judgment, and plaintiff was afforded the opportunity to file responsive materials, pursuant

to Roseboro v. Garrison, 528 F.3d 309, 310 (4th Cir. 1975).  Plaintiff did so, and defendants filed

a reply.  On March 28, 2008, the defendants' Motion to Dismiss plaintiff's complaint was granted,

---

[2] A pro se plaintiff's complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks and citations omitted).  Yet, this principle of liberal construction does not give pro se litigants an absolutely free rein.  See Laber v. Harvey, 438 F.3d 404, 413 n.3 (4th Cir. 2006) ("In interpreting a pro se complaint, . . . our task is not to discern the unexpressed intent of the plaintiff, but what the words in the complaint mean."); see also Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990) ("While pro se complaints may represent the work of an untutored hand requiring special judicial solicitude, a district court is not required to recognize obscure or extravagant claims defying the most concerted efforts to unravel them." (internal quotation marks omitted)).

and the complaint was dismissed.  Harrison v. Watts, et al., 1:06cv1061 (E.D. Va. Mar. 28, 2008) (Order) (hereinafter "Dismissal Order").  The accompanying Opinion explained that to merit protection under the Free Exercise Clause of the First Amendment, a plaintiff must allege facts sufficient to satisfy two threshold criteria.  First, a plaintiff must allege that his belief or beliefs are sincerely held.  Wisconsin v. Yoder, 406 U.S. 205, 215–16 (1972).  Second, a plaintiff must also allege that his claims are rooted in "religious" and not "purely secular" philosophical concerns.  Id.; see Thomas v. Review Bd. of Indiana Employment Security Div., 450 U.S. 707, 713–14 (1981) ("Only beliefs rooted in religion are protected by the Free Exercise Clause, which, by its terms, gives special protection to the exercise of religion.").  To be recognized as religious, sincerely held beliefs need not be (i) "acceptable, logical, consistent, or comprehensive to others;"[3] (ii) based on the existence of a supreme being or beings;[4] or (iii) based in or on a mainstream faith.[5]  Indeed, as the Supreme Court noted most recently in the Establishment Clause case of  McCreary County, Ky. v. American Civil Liberties Union of Ky., 545 U.S. 844 (2005), such beliefs may even be encompassed in the practice of atheism.  Yet importantly, only religious beliefs warrant free exercise protection under the First Amendment, and the Supreme Court has determined that a religion, which is entitled to such protection, is distinct from a "way of life," which receives no such protection, even if inspired by a "virtuous and admirable" philosophy.  See Yoder, 406 U.S. at 215–16.

Based on the foregoing authorities, and especially on plaintiff's own insistence that the

_____

[3] Thomas, 450 U.S. at 714.

[4] See Torcaso v. Watkins, 367 U.S. 488, 495 & n. 11 (1961); Myers v. Loudon County Public Schools, 418 F.3d 395, 411 (4th Cir. 2005) (quoting Torcaso, 367 U.S. at 495 n.11, for the proposition that the "Supreme Court has long recognized that some religions practiced in this country 'do not teach what would generally be considered to be a belief in the existence of God'").

[5] See Thomas, 450 U.S. at 714.

NOGE is not a religion and that its principles, values, and tenets are not religious in nature,[6] the

Opinion concluded as follows:

> By his own admission and as demonstrated in his numerous pleadings, plaintiff sought recognition for the NOGE as a "culture" or a "way of life." Although the NOGE contains elements of an organized cultural movement, such as teachings, texts, and "truths" about "God and the Devil" and plaintiff's "knowledge" of himself as a "Black man," plaintiff has failed to allege facts sufficient to show that such teachings "addresse[d] fundamental and ultimate questions having to do with deep and imponderable matters, comprehensive in nature[.]" Africa, 662 F.2d at 1037.[[7]]   Accordingly, because, by his own admission, plaintiff has only sought protection for a "way of life," he has failed to state a claim under the First Amendment.

> As such, plaintiff's RFRA claim is equally doomed.  The RFRA provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of the section."  42 U.S.C. § 2000bb-1(a).  Federal district courts have recognized that purely personal, political, ideological or secular beliefs probably would not satisfy enough criteria for inclusion within the term "religion."  See United States v. Meyers, 95 F.3d 1475, 1484 (10th Cir. 1996).  In the instant case, however, plaintiff alleges that the defendants improperly refused to acknowledge and recognize his "culture" or "way of life."  As plaintiff's beliefs in his "way of life" do not warrant protection under the RFRA, plaintiff has failed to state a claim.

> Finally, the instant complaint fails to state a claim under the Fifth Amendment for a violation of equal protection.  To state a Fifth Amendment claim for a violation of equal protection, plaintiff must allege facts sufficient to show that he was treated differently from other "similarly situated" inmates and that the "unequal" treatment resulted from either intentional or purposeful discrimination.  Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).  To meet this requirement, plaintiff is required to set forth "specific-non conclusory factual allegations that establish improper motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003).  This, plaintiff has simply failed to do.  Although plaintiff notes that another FCC Petersburg

---

[6] As defendants pointed out, plaintiff in his numerous administrative filings, the original complaint, and his numerous pleadings in this case went to great lengths to differentiate the NOGE from Islam and other religions.  See e.g., Compl. ¶ 14; Def'ts Exs. 2, 4, 8; Plt'f Attchs.

[7] Africa v. Pennsylvania, 662 F.2d 1025, 1031 (3d Cir. 1981).

> inmate was not required to submit outside information to the chaplain with
> respect to his religious questionnaire, notwithstanding this, plaintiff's
> questionnaire was ultimately forwarded to the RIC for review.  As such,
> plaintiff has failed to allege facts sufficient to show that he was intentionally
> or purposefully treated differently than any other similarly situated inmate.
> As such, he cannot state a claim under the Fifth Amendment, and his
> complaint, therefore, must be dismissed.

Opinion at 15–16.

The dismissal of the complaint was "without prejudice to plaintiff's ability to submit, within thirty days of the date of this Memorandum Opinion, [an] amended complaint that addresses the deficiencies raised in this complaint." Id. at 16.  Plaintiff failed to do so.  Instead, plaintiff waited until July 14, 2008, over three and a half months later, to file a "Verified Amended Complaint as per Court Order."  (Docket # 49).  In it, "[t]o somewhat appease the Court," plaintiff incorporates by reference "everything already stated in the original Complaint," with the exception that, wherever references are made to the NOGE not being a religion, he now wishes the following language to be substituted:

> We are not a religion as that term represents belief in, worship of, or the
> bowing down at an invisible, spooky, or spirit Being, Force or Power;
> however, we will accept religion 'only' as to it meaning (1) a state or way of
> life of a person in a monastery, convent, etc. (Webster's New World
> Dictionary); (2) any object of conscientious regard and pursuit (Webster's);
> (3) a belief in a divine power to be obeyed as the creator and ruler of the
> universe (Webster's); (4) any system of beliefs, practices, ethical values, etc.,
> resembling, suggestive of, or likened to such a system (Ours being Living
> Supreme Mathematics); 'the feelings, acts, and experiences of individual men
> in their solitude, so far as they apprehend themselves to stand in relation to
> whatever they may consider the divine' (American philosopher William
> James); sincerely-held beliefs dealing with issues of 'ultimate concern' that
> occupy a 'place parallel to that filled by . . . God in traditionally religious
> persons.'

Amended Compl. at 8.

In addition, wherever statements are made in the original complaint that the NOGE members

7

are "not religious," plaintiff now wishes to substitute the following language:

> We are not religious in the normal sense and definition generally given for the worship of an invisible, spooky, spirit God through ritual and practice; however, we are religious as that term represents being 'devout,' 'pious,' and 'godly.'

Id.

Plaintiff states that his practice and devotion to Allah's teachings have the same significance in his life as do the teachings of Jesus to a Christian or those of Buddha to a Buddhist, but that the term "religion" has negative connotations to the NOGE because religions historically have been used to enslave followers by encouraging them to worship a God they cannot see. Therefore, plaintiff rejects "the mystery god, heaven-in-the-sky, pie-after-you-die notion of religion espoused by the majority who claim 'religion,' and, as such, only accepts 'religion' on the terms that he is his own God." Amended Compl. at 2.

Simultaneously with his Amended Complaint, plaintiff filed a Letter/Motion for Reconsideration of the dismissal of his initial complaint pursuant to Rule 59(e), Fed. R. Civ. P., and/or Rule 60(b), Fed. R. Civ. P. (Docket # 50). Plaintiff states that he did not receive the Opinion until July 10, 2008, because BOP officials at USP Canaan "deliberately opened it, read it, and withheld it . . . intentionally" before forwarding it to plaintiff at FCI Ft. Dix over two months later, a course of action which plaintiff interprets as retaliation for his having filed lawsuits against BOP personnel. Id. at unnumbered p. 1. Plaintiff asks the Court to reconsider the dismissal of his complaint pursuant to Rule 59(e) because the NOGE is entitled to First Amendment protection despite its reluctance to call itself a religion. Plaintiff essentially takes issue with the Court's determination that the NOGE is a "way of life" rather than a religion and argues that the Court "should reverse itself and deny the motion to dismiss." Id. at unnumbered p. 8. Plaintiff also

contends that his claim of an equal protection violation should be allowed to go forward because there was nothing in the record to demonstrate that his New or Unfamiliar Religious Components Questionnaire ever was forwarded to the RIC for review.  Id. at unnumbered p. 9.

On August 11, 2008, defendants jointly filed a Motion to Dismiss the Amended Complaint or, in the Alternative, for Summary Judgment, along with a consolidated memorandum setting forth their opposition to plaintiff's Motion for Reconsideration.  (Docket ## 52–53).  Defendants argue that plaintiff's Motion for Reconsideration should be denied whether it is reviewed under the standard of Rule 59(e) or that of Rule 60(b).  Defendants also assert that plaintiff's First Amendment, Fifth Amendment, and RFRA claims were properly dismissed and that plaintiff should be precluded from raising arguments at this juncture that he could have raised previously. Defendants also claim qualified immunity regarding plaintiff's First Amendment and RFRA claims and argue that the Amended Complaint should be dismissed with prejudice.

## II. Standards of Review

Pursuant to Rule 59(e), Fed. R. Civ. P., "[a] motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment."  Relief under Rule 59(e) is available only

> (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.

Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993).  A motion under Rule 59(e) is committed to the discretion of the court and may not be used to raise arguments or legal theories that could have been presented prior to entry of the judgment.  Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 402 (4th Cir. 1998).  If a party relies on newly discovered evidence in a Rule 59(e) motion, a legitimate justification for failing to present it earlier must be produced.  Id.  As a general rule,

"reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." Id. (quoting 11 Wright et al., Federal Practice and Procedure § 2810.1, at 124 (2d ed. 1996)).

> Relief under Rule 60(b) is available for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Rule 60(b), Fed. R. Civ. P.  Again, relief under Rule 60(b) is extraordinary and is to be granted only upon a showing of exceptional circumstances, Compton v. Alton S.S. Co., 608 F.2d 96, 102 (4th Cir. 1979), and Rule 60(b) does not permit reconsideration of legal issues addressed in an earlier ruling. CNF Constructors, Inc. v. Donohoe Const. Co., 57 F.3d 395, 401 (4th Cir. 1995).

Rule 12(b)(6), Fed. R. Civ. P., provides for the dismissal of actions that fail to state a claim upon which relief can be granted.  In considering such a motion, a court may only rely on allegations in the complaint and those documents attached as exhibits or incorporated by reference.  Simmons v. Montgomery County Police Officers, 762 F.2d 30, 31 (4th Cir. 1985); Harksen v. Garratt, 29 F. Supp. 2d 265, 270 (E.D.Va. 1998).  Additionally, a court must presume that all factual allegations in the complaint are true and must accord all reasonable inferences to the non-moving party.  2A Moore's Federal Practice ¶ 12.07[2.5] (2d ed. 1994); see also Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978).  But, significantly, a court is not required to accept as true "conclusory allegations regarding the legal effect of the facts alleged."  Labram v. Havel, 43 F.3d 918, 921 (4th Cir. 1995).  A complaint should not be dismissed for failure to state a claim as long as it states a

claim for relief that is plausible on its face.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U. S. 544, 127 S. Ct. 1955, 1974 (2007).  "[Where a] plaintiff[] [fails to nudge his] claims across the line from conceivable to <u>plausible</u>, [the] complaint <u>must</u> be dismissed."  <u>Id.</u>  (emphasis added).

### III.  Analysis

### A. Plaintiff's Motion for Reconsideration

Generally, the decision as to whether a motion for reconsideration is governed by Rule 59(e) or Rule 60(b) is dictated by the timing of the motion's filing.  A motion filed within ten (10) days of the entry of judgment is considered under the more lenient standard of Rule 59(e); all other motions are reviewed pursuant to Rule 60(b).  <u>In re Burnley</u>, 988 F.2d 1, 2–3 (4th Cir. 1992).  Here, as noted, plaintiff's Motion for Reconsideration was filed almost four months after the judgment dismissing the initial complaint was entered.  Plaintiff asserts, without support, that the delay was the result of retaliation by prison personnel stemming from plaintiff's filing of this lawsuit, and he argues on that basis that his Motion for Reconsideration should be reviewed pursuant to Rule 59(e).  In any event, because plaintiff is not entitled to relief under either Rule 59(e) or Rule 60(b), the issue concerning the motion's filing date need not be resolved.

It is abundantly clear that Rule 59(e) relief from dismissal of the initial complaint is not warranted, as plaintiff has made no showing of (i) an intervening change in controlling law, (ii) new evidence that was not available to him previously, or (iii) a clear error of law or manifest injustice that would otherwise result.  <u>See</u> <u>Hutchinson</u>, 994 F.2d at 1081.  Accordingly, plaintiff is entitled to no relief under Rule 59(e).

As to his Fifth Amendment claim, plaintiff asserts that the Opinion incorrectly concluded that plaintiff could not demonstrate that he was treated differently from other inmates or that such

unequal treatment resulted from a discriminatory purpose.  To support this argument, plaintiff points out that the Court struck portions of the Declaration of Chaplain Huertas that was submitted in support of defendants' Motion to Dismiss the initial complaint and that, without those portions, nothing in the record supports the conclusion that plaintiff's New or Unfamiliar Religious Components Questionnaire ever was forwarded to the RIC for consideration.  In conjunction with their Consolidated Memorandum opposing plaintiff's Motion for Reconsideration, defendants have supplied the Declaration of Bruce Fenner, Assistant Chaplain Administrator in the Religious Services Branch of the BOP, which confirms that the questionnaire was forwarded by the warden of FCC Petersburg to the RIC on April 12, 2006.  Fenner Decl. at ¶ 3.  The letter from the warden that accompanied the questionnaire requested a recommendation regarding whether the NOGE should be authorized to meet as a religious group and what accommodations should be made for them.  Id. at ¶ 4.  The RIC met to consider the request on June 2, 2006, and sent a letter to FCC Petersburg containing its recommendations on June 22, 2006.  Id. at ¶ 6, Att. 2–3.  Consequently, as the Opinion concluded, plaintiff's Equal Protection Clause claim fails as a matter of law because he cannot demonstrate either that he was treated differently from similarly situated inmates, or that any unequal treatment resulted from intentional or purposeful discrimination.  Cf. Morrison, 239 F.3d at 654.  Therefore, reconsideration of the dismissal of plaintiff's Fifth Amendment claim pursuant to Rule 59(e) is appropriately denied.

If plaintiff's Motion for Reconsideration is reviewed pursuant to Rule 60(b), it still warrants no relief.  Plaintiff has made no showing that any of the provisions of that rule apply in this case, nor does he demonstrate that exceptional circumstances exist that would warrant the relief he seeks. See Compton, 608 F.2d at 102.  Therefore, plaintiff's Motion for Reconsideration, construed as

12

seeking relief under both Rule 59(e) and Rule 60(b), must be denied.

**B. Plaintiff's Amended Complaint Is Futile and Alternatively Must Be Dismissed**

As discussed above, plaintiff's initial complaint in this case was dismissed based on his own insistence that the NOGE is not a religion and that its principles, values, and tenets are not religious in nature, but constitute instead a way of life. Plaintiff had steadfastly and adamantly maintained this position not only in the initial complaint itself, but throughout the administrative process leading up to this federal lawsuit and, until now, in his various additional pleadings filed in this Court. See supra note 6. The dismissal was without prejudice to plaintiff's ability to file an amended complaint within thirty (30) days. Nonetheless, almost four months elapsed until, "[t]o somewhat appease the Court," and because he now understands that a "way of life" warrants no protection under the First Amendment or the RFRA, plaintiff filed an Amended Complaint in which he seeks to reverse completely his long-standing position that the NOGE is not a religion, by now characterizing the NOGE as a religion after all. For the reasons that follow, plaintiff's Amended Complaint was untimely and leave pursuant to Rule 15, Fed. R. Civ. P., to file the Amended Complaint must be denied as futile. In the alternative, defendants' Motion to Dismiss the Amended Complaint must be granted.

First, as noted, the Dismissal Order was entered on March 28, 2008, and granted plaintiff thirty (30) days within which to file an amended complaint. Yet, for reasons that are not compelling,[8] plaintiff's amendment to his complaint was not filed until July 17, 2008, almost four

---

[8] Plaintiff's accusation that officials at USP Canaan "deliberately opened [his legal mail from the Court], read it, and withheld it . . . intentionally" before forwarding it to plaintiff at FCI Ft. Dix in retaliation for plaintiff's lawsuits against BOP personnel is deserving of skepticism. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) ("In the prison context, we treat [retaliation] claims with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in

months later.  Plaintiff's leave to file an amended complaint had therefore expired.  Without more, on that basis alone, the untimely filed Amended Complaint is subject to dismissal.

Yet, this conclusion does not end the analysis, as plaintiff's Amended Complaint is appropriately construed as including a motion for leave to file an amended complaint pursuant to Rule 15(a), Fed. R. Civ. P.  Rule 15(a) provides that once a defendant has filed a responsive pleading, a plaintiff may amend his complaint only with leave of court or by written consent of the defendant.  Although the Rule directs that leave of court to amend "shall be given freely when justice so requires," the Fourth Circuit interprets this directive to provide that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  While it thus is apodictic that amendments to complaints are to be freely allowed, particularly in the context of pro se litigation, in this instance plaintiff's attempt to introduce a new theory at this stage of the case is tantamount to a complete rewriting of the position he has espoused to this point and which, for the two reasons that follow, would be futile.  Alternatively, even if plaintiff were granted leave to file the Amended Complaint, defendant's Motion to Dismiss the Amended Complaint must be granted for the same reasons.

First, if plaintiff's proposed amendment were allowed, the Amended Complaint would nonetheless be subject to dismissal as unexhausted.  It is well established that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a

---

the sense that it responds directly to prisoner misconduct.'" (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995)).

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81 (2006) (requiring complete exhaustion of correctional facility administrative remedies).  The exhaustion requirement for prison condition claims is mandatory.  See Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) (holding that "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues").  In interpreting the exhaustion requirement of § 1997e(a), the Supreme Court looks for guidance to habeas corpus law. See Woodford, 548 U.S. at 88.  In habeas corpus jurisprudence, it has long been established that a claim is not exhausted unless it rests in the federal forum on the same factual and legal arguments that were raised and adjudicated in the state courts.  See Duncan v. Henry, 513 U.S. 364 (1995) ("[E]xhaustion of state remedies requires that petitioners fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of prisoners' federal rights. . . . [M]ere similarity of claims is insufficient to exhaust." (internal quotation marks omitted) (citing Anderson v. Harless, 459 U.S. 4 (1982); Picard v. Connor, 404 U.S. 270 (1971)).

The BOP's Administrative Remedy Program, see 28 C.F.R. §§ 542.10-19, provides a process through which federal inmates may seek formal review of issues relating to any aspect of their confinement.  As described in the Opinion, plaintiff, throughout the administrative grievance process, consistently emphasized that the NOGE is a "way of life" rather than a religion.  Plaintiff himself has described his efforts to convince BOP officials that the "NOGE is not of any 'Islamic persuasion' since the NOGE do not live Islam as a 'religion,' but as a Culture/Way of Life/Nature, and that although many of the NOGE tenets, values, and/or principles may mirror some of the same

values of what is termed 'religion,' the NOGE is not a religion, and in fact have <u>no</u> religion."
(Docket # 31 at 6, emphasis in original).  To the extent that plaintiff now wishes to amend his
complaint to add language that suggests or characterizes the NOGE as a religion, his claims would
be unexhausted, as plaintiff would thereby be substantially altering his position on the central and
dispositive issue in this case.   Because plaintiff consistently maintained throughout the
administrative grievance process that the NOGE is not a religion, plaintiff did not "fairly present[]"
the "substance" of his amended claims to prison administrators.  <u>Harless</u>, 459 U.S. at 6 (internal
quotation marks and citation omitted).  As the mandatory requirement of administrative exhaustion
would be unfulfilled as to the claims asserted, the Amended Complaint would be subject to
dismissal.  <u>See</u> <u>Booth</u>, 532 U.S. at 739.

Second, allowing plaintiff to amend his complaint to characterize the NOGE as a religion
after having repeatedly averred that the NOGE is not a religion, but instead a "way of life," would
be futile because it is simply implausible that plaintiff genuinely considers the NOGE to be a
religion.  As was noted in the Opinion, where an inmate charges prison officials with interfering
with his right to practice his religion, determination of whether his professed beliefs are sincerely
held and religiously motivated is a difficult but necessary question for courts to decide.  <u>United
States v. Seeger</u>, 380 U.S. 163, 185 (1965); <u>Doswell v. Smith</u>, No. 94-6780, 1998 WL 110161, at
*3 (4th Cir. Mar. 13, 1999) (citing <u>Gallahan v. Hollyfield</u>, 670 F.2d 1345 (4th Cir. 1982)).  Such an
analysis can be "exceedingly amorphous, requiring the factfinder to delve into the claimant's most
veiled motivations."  <u>Patrick v. LeFevre</u>, 745 F.2d 153, 157–58 (2d Cir. 1984) (noting that
determination of whether a Five Percenter could demonstrate entitlement to First Amendment
protection "would require the factfinder to delve into the internal operations of the claimant's

mind").  Yet, however difficult such an inquiry might be in some cases, it is quite simple and straightforward in this case because plaintiff has been quite candid and forthright from the outset that he does not consider his beliefs to be religiously motivated, but instead to comprise a "way of life" or "culture" that impel him to act in certain manners.  Thus, the "internal operations of the claimant's mind" in this case have been fully disclosed and clearly articulated in the initial complaint and hence there was no requirement then or now to "delve into the claimant's most veiled motivations."  Id.  Rather, in evaluating plaintiff's complaint, he was simply and appropriately taken at his word.  Only now that it has become apparent to plaintiff that a "way of life" or "culture" does not warrant constitutional protection and will not gain him the relief he seeks does he attempt to reverse his long-standing and adamant position that the NOGE is not a religion and that its precepts are not religious in nature.  Thus, even if plaintiff were allowed to amend his complaint, such an amendment at this juncture would be futile as the record in this matter, taken as a whole, clearly reflects that in the "internal operations of the claimant's mind," the NOGE is a "way of life" and not a religion warranting First Amendment protection.  Id.

Case law is neither contrary to this result nor settled.  Although the NOGE appears to be a widespread prison phenomenon, there is, surprisingly, no controlling circuit precedent on the question whether the NOGE is a religion for First Amendment purposes.  Most cases in this and other circuits bypass this question by assuming without deciding that the NOGE constitutes a religion entitled to First Amendment protection, but then proceed to uphold restrictions on the group as rationally related to the legitimate end of maintaining prison security.[9]  Similarly, courts have

_____

[9] See In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 466–69 (4th Cir. 1999), cert. denied, 528 U.S. 874 (1999) (hereinafter In re . . . Five Percenters); see, e.g., Fraise v. Terhune, 283 F.3d 506, 519 (3d Cir. 2002) (upholding a ban on Five

17

consistently held, for the same reason, that restrictions placed on Five Percenter practices do not

offend the RFRA or its successor, the Religious Land Use and Institutionalized Persons Act

("RLUIPA").[10]  In upholding restrictions on the NOGE, courts have emphasized the organization's

documented connection to prison violence.[11]  Only a single district court has held that a Five

---

Percenter newspaper where inmates could possess, study, and discuss the Bible and the Koran); Brown v. D.O.C. PA, 265 F. App'x 107, 110 (3d Cir. 2008) (same; granting summary judgment to defendants under First Amendment); Harbin-Bey v. Rutter, 420 F.3d 571 (6th Cir. 2005) (confiscation of inmate's Five Percenter-related mail did not violate his constitutional rights); Cartwright v. Meade, 2008 WL 2944668 (W.D. Va. July 31, 2008) (confiscation of Five Percenter materials from inmate's cell did not violate the First Amendment); Johnson v. Stewart, 2008 WL 828086 (W.D. Mich. March 26, 2008) (confiscation of Five Percenter literature did not violate First Amendment); Talbert v. Jabe, 2007 WL 3339314 (W.D. Va. Nov. 8, 2007) (confiscation of Five Percenter mail did not violate First Amendment); Cooper v. Starling, 2003 WL 23350443, at *1 (E.D. N.C. Jan. 8, 2003), aff'd, 71 F. App'x 248 (4th Cir. 2003) (holding that confiscation of inmate's Five Percenter "religious medallion" as contraband did not violate the First Amendment).

[10] See, e.g., Brown, 265 F. App'x at 110 (granting summary judgment to defendants on Five Percenter plaintiff's RLUIPA claim); Cartwright, 2008 WL 2944668, at *2 n.2 (holding in dicta that classification of Five Percenters as a security threat group and resulting confiscation of their materials did not state a claim under RLUIPA where there was no showing that plaintiff was substantially burdened in the exercise of his religion); Talbert, 2007 WL 3339314, at *5 (rejecting a claim that classifying the Five Percenters as a security threat group placed a substantial burden on inmate's right to exercise his religion or violated the RLUIPA); Bells v. Ozmint, 2007 WL 1862668 (D.S.C. June 6, 2007) (confiscation of Five Percenter material did not violate RLUIPA).

[11] See, e.g., In re . . . Five Percenters, 174 F.3d at 467 (noting (i) that a federal intelligence summary "called the Five Percenters a 'radical Islamic sect/criminal group' that 'is often boldly racist in its views, prolific in its criminal activities, and operates behind a facade of cultural and religious rhetoric'" and (ii) that a New Jersey intelligence report described "the Five Percenters as 'a group of individuals who espouse violence as a means to an end'"); Fraise, 283 F.3d at 512 (noting that the Five Percent Nation has been recognized as "one of the greatest threats to the social fabric" of the prisons, based on a string of violent incidents in New Jersey prisons between August 1990 and July 1997); Talbert, 2007 WL 3339314, at *1 n.3 (stating that Five Percenters reportedly espouse radically racist views and support acts of violence as the means to an end); Allah v. Beyer, 1994 WL 549614, at *3 (D.N.J. Mar. 29, 1994) (noting the close connection between the Five Percent Nation and violence or gang-related activity); Self-Allah v. Annucci, 1999 WL 299310, at *9 (W.D.N.Y. Mar. 25, 1999) (referring to the "substantial history of violence associated with Five Percenter activities). The Five Percenters have been designated a "security threat group" by a number of prison systems, including the BOP, In re . . . Five Percenters, 174 F.3d at 467; the New York State Department of Correctional Services, Marria v. Broaddus, 2003 WL 21782633, at *1

Percenter's beliefs are religious in nature and therefore deserving of protection under the First Amendment and the RLUIPA, and its conclusion in this respect is neither controlling nor persuasive. See Marria v. Broaddus, 2003 WL 21782633, at *11–12 (S.D.N.Y. July 31, 2003).  There is, therefore, no controlling or persuasive authority inconsistent with the result reached here.

In summary, plaintiff's Amended Complaint is subject to dismissal because it was filed well outside the thirty-day period allowed in the Dismissal Order of the initial complaint.  Moreover, leave pursuant to Rule 15(a) to file the Amended Complaint must be denied as futile.  Were plaintiff permitted at this juncture to revise his heretofore adamant insistence that the NOGE is not a religion, the mandatory requirement that his claims be exhausted administratively would no longer be fulfilled, and the Amended Complaint would be subject to dismissal on that basis.  Additionally, were plaintiff allowed to amend the complaint to characterize the NOGE as a religion, his claims would still fail in light of his repeated averments that the NOGE is not a religion.  In the alternative, and for the same reasons why it would be futile to allow plaintiff to amend his complaint, defendants' Motion to Dismiss the Amended Complaint must be granted.[12]

### C. Qualified Immunity

In the alternative, even assuming the NOGE is a religion deserving of First Amendment and RFRA protection as alleged in plaintiff's Amended Complaint, it is clear that dismissal of the Amended Complaint would nonetheless be appropriate based on qualified immunity.  To begin with,

---

(S.D.N.Y. July 31, 2003); the South Carolina Department of Corrections, In re . . . Five Percenters, 174 F.3d at 465; the New Jersey Department of Corrections, Fraise, 283 F.3d at 509; and the Virginia Department of Corrections, Cartwright, 2008 WL 2944668, at *1.

[12] Nothing in plaintiff's Amended Complaint changes plaintiff's Fifth Amendment equal protection claim.  As a result, the reasons supporting dismissal of his Fifth Amendment claim remain valid.

it is important to note that defendant's release from custody renders moot his claims for injunctive and declaratory relief, leaving only his claim for damages against the individual defendants, which—if appropriate—may be barred by qualified immunity.[13]   Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Under Saucier v. Katz, 533 U.S. 194, 200–01 (2001), the resolution of a qualified immunity defense was a sequential, two-pronged inquiry: "the first inquiry must be whether a constitutional [or statutory] right would have been violated on the facts alleged; . . . the next, sequential step is to ask whether the right was clearly established."  A right is only clearly established for qualified immunity purposes when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202.  Significantly, the Supreme Court recently reconsidered Saucier and held that district courts have the discretion to proceed directly to the second step of the Saucier analysis after assuming without deciding that a constitutional violation occurred. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

---

[13] The Supreme Court has made plain that "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969).  Where an inmate challenges prison policies or conditions, his transfer or release moots his claims for injunctive and declaratory relief from those policies or conditions, even if his claims for damages survive. See, e.g., Incumaa v. Ozmint, 507 F.3d 281, 286–87 (4th Cir. 2007), cert. denied, 128 S. Ct. 2056 (2008) (appeal from denial of a First Amendment challenge to ban on maximum security inmates' receipt of certain publications dismissed as moot following plaintiff's release); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (holding that a prisoner's transfer mooted claims for declaratory and injunctive relief).  The exception to the mootness doctrine for disputes that are capable of repetition, yet evading review does not apply in such instances, because once a prisoner is released from custody the challenged policies or conditions will never again apply to him "save some serious misstep on his part." Incumaa, 507 F.3d at 282, 289.

Here, it is clear that the individual defendants did not violate plaintiff's First Amendment or RFRA rights because, as documented in his own numerous administrative filings and pleadings in this case, the plaintiff's NOGE beliefs are not religious in nature and accordingly do not warrant protection under the First Amendment or the RFRA.  Yet, even assuming that a constitutional or statutory violation occurred, it is pellucidly clear that plaintiff's First Amendment and RFRA rights as a member of the NOGE were not clearly established.  First, as discussed above, there is no controlling circuit precedent on whether the NOGE is a religion for First Amendment and RFRA purposes, and authority outside the circuit is similarly unsettled.  Additionally, given that plaintiff adamantly maintained at the time he requested recognition for the NOGE that the group was not a religion, it would be absurd to conclude that a reasonable officer was on notice that the law required him to disregard plaintiff's statements in this regard and conclude that the NOGE was a religion entitled to First Amendment and RFRA protection.  Qualified immunity thus represents yet another reason why it would be futile to allow plaintiff to amend his complaint and why, alternatively, defendants' Motion to Dismiss the Amended Complaint must be granted.

## D. Plaintiff's Motion for Leave to File Sur-Reply

Plaintiff has moved for leave to file a sur-reply to defendants' Reply Memorandum in opposition to plaintiff's Motion for Reconsideration.  The sur-reply was filed simultaneously with the motion.  Plaintiff's motion to file the sur-reply accordingly will be granted.

## IV. Conclusion

For the foregoing reasons, plaintiff's Motion for Reconsideration must be denied.  Plaintiff's Amended Complaint was untimely and leave pursuant to Rule 15, Fed. R. Civ. P., to file the Amended Complaint must be denied as futile.  In the alternative, defendants' Motion to Dismiss

must be granted, and the Verified Amended Complaint must be dismissed with prejudice for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Fed. R. Civ. P. Plaintiff's Motion for Permission to File Sur-Reply will be granted.   An appropriate Order and judgment shall issue.


                                                         /s/

Alexandria, Virginia                                     T. S. Ellis, III
March 26, 2009                                       United States District Judge